IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:16-CV-272-FL

| | | |
|---|---|---|
| MICHELLE LYNN JENSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on pro se plaintiff's motion for reconsideration of the court's June 13, 2017 order denying plaintiff's motion to supplement the record (DE 25) as well as the parties' cross-motions for judgment on the pleadings. (DE 13,[1] DE 20). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion for reconsideration, grant plaintiff's motion for judgment on the pleadings, deny defendant's motion for judgment on the pleadings, and remand to defendant for further consideration or award of benefits. Defendant timely filed objections to the M&R, and the issues raised are ripe for ruling. For reasons noted, the court rejects the M&R, denies plaintiff's motions, and grants defendant's motion.

---

[1] Plaintiff titled her motion for judgment on the pleadings as "motion for judgment reversing or modifying the decision of the commissioner, or remanding the case for rehearing." (DE 13).

**BACKGROUND**

On February 13, 2013, plaintiff protectively filed an application for period of disability and disability insurance benefits, alleging disability beginning September 13, 2012. The claims were denied initially and upon reconsideration. Plaintiff requested hearing before an administrative law judge ("ALJ"), who, after hearing held March 19, 2015, issued an unfavorable decision on April 14, 2015. The Appeals Council denied plaintiff's request for review on September 2, 2016, leaving the ALJ's decision as defendant's final decision. Plaintiff then filed this action pro se seeking judicial review of the ALJ's decision on November 4, 2016.

**DISCUSSION**

A.   Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v.

2

Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the

3

claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 13, 2012. At step two, the ALJ found that plaintiff had the following severe impairments: multiple sclerosis ("MS"); sciatica; carpal tunnel syndrome; migraines; and major depressive disorder with anxiety. At step three, the ALJ determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

Before proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work, with the following restrictions: she requires a sit /stand option allowing for position changes at 30-minute intervals; can frequently push, pull, handle, finger, feel, operate hand controls and/or reach in all directions with her upper extremities; can occasionally
balance, stoop, kneel, crouch, crawl, and/or climb ramps and stairs, but cannot climb ladder, ropes, or scaffolds; must avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights, and she must avoid concentrated exposure to temperature extremes of cold, heat, wetness, and humidity; can understand and perform simple, routine, repetitive tasks and can maintain concentration, persistence, and pace for 2 hours periods over the course of a typical 8-hour workday in order to perform such tasks, in a low stress work setting which, in addition to the nature

of the tasks being performed, is further defined by a work setting that is not production-pace or quota-based, rather a goal-oriented job, with only occasional changes in the work setting.

At step four, the ALJ concluded plaintiff was unable to perform his past relevant work as a pharmacist. At step five, the ALJ determined that prior jobs existed in the national economy that plaintiff could have performed. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.   Analysis

    1.   Listing 11.09

The court will first turn to the magistrate judge's determination that substantial evidence did not support the ALJ's finding that plaintiff's impairments did not meet Listing 11.09, entitled "multiple sclerosis," in that the ALJ failed to adequately explain his determination, to which defendant objects.

The Listing of Impairments "describes for each of the major body systems impairments that [defendant] consider[s] to be severe enough to prevent an individual from doing any gainful activity," irrespective of vocational factors such as "age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). The listed impairments "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Id. at 530. A social security claimant bears the burden of demonstrating that his "medically determinable" impairments, those impairments expected to either result in death or "last for a continuous period of at least 12 months," 20 C.F.R. §§ 404.1525(c)(5), (d); 416.925(c)(5), (d), meet or, either individually or in combination, medically

5

equal one of the listed impairments. Id. §§ 404.1525(c)(4)–(5), 416.925(c)(4)–(5); Pass, 65 F.3d at 1203 (holding that social security claimants bear the burden of proof at step three).

Even though a social security claimant may not "meet" the criteria for a listed impairment, his impairments may "medically equal" those criteria. 20 C.F.R. §§ 404.1525(c)(5); 416.925(c)(5). A social security claimant's impairments medically equal a listed impairment where they are "at least equal in severity and duration to the criteria of any listed impairment." Id. §§ 404.1526(a), 416.926(a). In other words, a social security claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 531; accord 20 C.F.R. §§ 404.1526(a), 416.926(a). However, the social security claimant's evidence must be targeted to the most analogous listed impairment's criteria, not the social security claimant's overall functional limitations. See Social Security Ruling ("S.S.R.") 83-19, 1983 WL 31248, at *91–92; see also S.S.R 96-6p, 1993 WL 374180, at *1–2 (reinstating S.S.R. 83-19); Zebley, 493 U.S. at 531.

To meet Listing 11.09 requires a diagnosis of MS, accompanied by one of the following:

A. Disorganization of motor function as described in 11.04B;[2] or
B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

Listing of Impairments, § 11.09.[3]

---

[2] Listing 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." Listing of Impairments, § 11.04B.

[3] Listing of Impairments can be found at 20 C.F.R. pt. 404, subpt. P, app. 1.

Additionally, a claimant meets Listing 11.09B, the subpart of the MS listing regarding mental impairments, if a claimant meets the criteria for Listing 12.02 (Organic Mental Disorder).[4] This listing is met if history and medical evidence "demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." Id. at § 12.02 (introductory paragraph). A claimant must satisfy (i) the introductory paragraph; and (ii) the requirements in both paragraphs A and B, or the requirements in paragraph C. Paragraph A requires an intellectual disorder characterized by (i) loss of specific cognitive abilities or affective changes; and (ii) "medically documented persistence" of at least one of seven conditions listed.[5] Id. at § 12.02(a). Of significance here, paragraph B ("paragraph B criteria") requires that a claimant demonstrate at least two of the following four limitations resulting from her paragraph A symptoms: 1) "[m]arked restriction of activities of daily living"; 2) "[m]arked difficulties in maintaining social functioning"; 3) "[m]arked difficulties in maintaining concentration, persistence, or pace"; or 4) "[r]epeated episodes of decompensation, each of extended duration." Id. at § 12.02(B)(1)-(4).[6]

---

[4] The listing has been updated since the date of the ALJ's decision. See Listing of Impairments, §§ 12.00-12.02 (effective Mar. 27, 2017, through Jan. 17, 2022); 82 Fed. Reg. 5872 (Jan. 17, 2017); 81 Fed. Reg. 66161 (Sept. 26, 2016). The court reviews the ALJ's decision based on the version of Listing 12.02 that was in effect at the time of the ALJ's decision. See 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016) (noting that federal judicial review should apply the regulations in effect at the time of the final agency decision but that any amended regulations will be applied if a matter is remanded for further administrative proceedings after the effective date of the amended regulations). All references herein are to the version of Listing 12.02 in effect at the time of the ALJ's decision.

[5] The conditions are (1) "[d]isorientation to time and place"; (2) "[m]emory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past)"; (3) "[p]erceptual or thinking disturbances (e.g., hallucinations, delusions)"; (4) "[c]hange in personality"; (5) mood disturbances; (6) "[e]motional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control"; and (7) "[l]oss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing." Listing of Impairments, § 12.02(A).

[6] Paragraph C is not at issue in this litigation.

Under step three, the ALJ determined that plaintiff's MS was a severe impairment and quoted the requirements of Listing 11.09, but stated only that "based upon a review of the medical evidence," plaintiff's impairments "do not meet listing level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. at 21). The ALJ provided no further discussion as to Listing 11.09, but does discuss at length Listing 12.02, paragraph B criteria.

The Fourth Circuit has held that where a claimant has a severe impairment and the record contains evidence that symptoms related to the impairment "correspond to some or all of the requirements of the listing," the ALJ must identify the relevant listed impairments and "compare each of the listed criteria to the evidence of [plaintiff's] symptoms." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). A lack of adequate explanation in step three, however, does not necessitate remand if an ALJ sufficiently explains his conclusions elsewhere. See, e.g., Johnson v. Astrue, No. 5:08-CV-515-FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) ("Meaningful review may be possible even absent the explicit step-by-step analysis set out in Cook where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof.").

In the instant case, the ALJ did give sufficient explanation to allow the court to determine that substantial evidence supports his decision. First, he specified the listings he considered in making his determination, including Listing 11.09 and Listing 12.02, paragraph B criteria, the latter of which the ALJ discussed at length. He noted that the medical evidence failed to establish the applicability of the regulations to any of plaintiff's impairments, either individually or in combination. While he did not at that point explicitly compare plaintiff's symptoms to Listing 11.09, except with regard to Listing 12.02, he later described in detail the medical evidence relevant

8

to plaintiff's alleged symptoms in the context of his RFC determination. This discussion, spanning numerous pages, is sufficient to allow the court to perform its reviewing function.[7]

Turning now to that review, the court finds substantial evidence supports the ALJ's determination that plaintiff does not meet or exceed the relevant listed impairment. First, regarding Listing 12.02, paragraph B criteria, the ALJ found only mild restrictions in activities of daily living and social functioning and moderate difficulties with regard to concentration, persistence, or pace. (Tr. at 22-23, 87-88, 101-02). The ALJ noted that plaintiff is able to care for her personal hygiene, feed and dress herself, drive a car, fix simple meals, go shopping, and handle money. (Tr. at 22-23, 215-225). The ALJ also noted that while plaintiff has reported limitations in this area, these are primarily linked to physical issues, such as fatigue and vertigo issues. (Tr. at 23, 66). The ALJ noted that plaintiff shops once a week, goes to church regularly, and frequently sees other people at her children's sporting events. (Tr. at 23, 220-221). Finally, the ALJ noted that plaintiff testified she experiences difficulty concentrating, particularly when attempting to multi-task, and that the results of a consultive psychological examination indicated mild-to-moderate impairment in this area, depending upon the task. (Tr. at 22-23, 287-290).[8]

The ALJ additionally reviewed plaintiff's mental limitations under his RFC analysis, which the court discusses more thoroughly below with regard to the ALJ's credibility analysis of plaintiff. In sum, the ALJ noted that the record and plaintiff's testimony makes evident that much of

---

[7] The magistrate judge based his decision to remand on the finding that the ALJ's analysis insufficiently addressed Listing 11.09B, as established by Listing 12.02B, citing to the listing currently in effect. See Listing of Impairments, § 12.02B (2017) (stating this listing is met if a claimant demonstrates "extreme limitation of one, or marked limitation of two, of the following areas of mental function: (1) understand, remember or apply information; (2) interact with others, (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself."). However, this listing went into effect after the issuance of the ALJ's decision.

[8] The ALJ additionally noted that plaintiff has "experienced no episodes of decompensation, which have been of extended duration." (Tr. at 23). Plaintiff does not dispute this finding.

9

plaintiff's reported limitations focuses on cognitive issues, such as memory, word findings, problems with concentration and focus, and inability to multi-task. (Tr. at 29, 287-88, 357, 370, 376). The ALJ recognized that plaintiff has experienced cognitive impairment secondary to MS, but that the evidence shows she continues to be in at least the average range of intellectual functioning, as measured by Dr. Kathleen Long who conducted a WAIS-IV exam of plaintiff, finding not only an average range of intellectual functioning but also average range of working memory and processing speed. (Tr. at 29, 282). The ALJ turned to additional evidence from both Dr. Long and Dr. J. Griffith Steel, noting this evidence suggests limitations in processing speed and working memory, but stated that "[w]hile these deficits might disqualify the claimant from performing complex tasks . . . the evidence does not support an inability to perform simple, unskilled work and to maintain concentration, persistence, and pace needed to accomplish those types of tasks." (Tr. at 29, 272-73, 279-285).

The above evidence is substantial support for the ALJ's determination that plaintiff does not meet Listing 12.02B, and therefore Listing 11.09B, which requires a showing of two "marked" restrictions, defined as more than moderate but less than extreme.

Turning to plaintiff's physical complaints related to her MS, the ALJ noted that physically the record indicates that plaintiff's MS has been stable, especially since plaintiff began taking Gilenya, and that in the most recent records, plaintiff has reported being fully functional in her activities of daily living, walking her dogs regularly, and mowing her lawn. (Tr. at 29). These records show that treating neurologist Dr. Steel found plaintiff "is fully functional in all activities," including "unlimited" walking, and that plaintiff had a "normal gait, normal walking, good strength, no tremors or abnormal involuntary movements." (Tr. at 357, 359). The ALJ noted that with regard

to plaintiff's carpel tunnel syndrome, the most recent records show she was not wearing splints, although plaintiff testified she wears them at night. (Tr. at 29, 357). The ALJ additionally noted that plaintiff experienced pain relief from Neurontin, although tingling in her hands remained. (Tr. at 29, 52-54, 395). The court finds this evidence is adequate to support the conclusion that plaintiff does not meet Listing 11.09A, which requires significant and persistent disorganization of motor function in two extremities, or Listing 11.09C, which requires significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination.[9]

Finally the evidence as a whole does not suggest that the combination of plaintiff's symptoms meets any listing. Accordingly the court rejects the findings, analysis, and recommendation in the M&R as to this issue and finds substantial evidence supports the ALJ's conclusion that plaintiff's symptoms did not meet Listing 11.09.

2. Plaintiff's Motion to Supplement the Record

On April 3, 2017, plaintiff filed a motion to supplement the record with new material evidence, which the court denied without prejudice on June 13, 2017, where the issues raised concerned supplementation of the record must be considered in conjunction with the pending motion for judgment. On July 21, 2017, plaintiff filed the instant motion for reconsideration regarding the court's June 13, 2017 order.[10]

---

[9] Although the court addresses Listings 11.09A and 11.09C, the court recognizes that plaintiff does not argue in her filings to this court that she meets either of these sub-listings.

[10] Although the magistrate judge addressed plaintiff's motion to supplement the record, where plaintiff filed no objections to the magistrate judge's report that denied plaintiff's motion but also recommended remand, the court will review plaintiff's motion and arguments.

Plaintiff requests the court consider evidence not previously submitted, relating to plaintiff's former employment as a pharmacist, consisting of the following: 1) Onslow Memorial Hospital Record of Disciplinary Action; 2) Onslow Memorial Hospital Time Detail; 3) Onslow Memorial Hospital Letter of Separation of Employment; 4) Onslow Memorial Hospital Letter to LTD Insurance Company; 5) Statement of Medical Condition by Dr. J. Griffith Steel; 6) Onslow Memorial Hospital Request for FMLA, dated November 2, 2011; 7) Onslow Memorial Hospital 6-Month Renewal of FMLA, dated June 14, 2012; 8) Disability Claim Physician's Statement, dated September 10, 2012; and 9) Abilities Form, dated April 16, 2014. (DE 15-1).

When a plaintiff submits evidence that has not been presented to the Commissioner, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence six remand under 42 U.S.C. § 405(g). In a sentence six remand, the court does not rule on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." Id. Under sentence six, "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added); see also Nuckles v. Astrue, No. 7:09-CV-13-FL, 2009 WL 3208685, at *4 (E.D.N.C. Sept. 14, 2009) (explaining a sentence six remand requires the evidence be new and material and there must be good cause for failing to submit the evidence earlier).

Plaintiff's "new evidence" fails in that she has not shown "good cause" for her failure to incorporate her evidence into the record previously and in that this evidence is neither new nor material. See Wilkins v. Sec'y, Health and Human Servs., 953 F.2d 93, 96 (4th Cir.1991) ("Evidence is new within the meaning of this section if it is not duplicative or cumulative. . . . Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.").

First, on July 24, 2015, the Appeals Council granted plaintiff's request for an additional 45 days to act and informed by mail both plaintiff's counsel and plaintiff that new material evidence could be submitted. (Tr. at 5-6). Plaintiff argues that she never received this mail. (DE 28 at 3). Plaintiff additionally argues that she would have submitted this evidence to the Appeals Council, but she did not know she had that opportunity previously, because her "representative failed to communicate this with [her]." (DE 25 at 1).

Courts have repeatedly held that attorney mistakes are not considered "good cause" in this context. See, e.g., Taylor v. Comm'r of Soc.Sec., 43 Fed. App'x 941, 943 (6th Cir. 2002) ("[T]here is absolutely no statutory or decisional authority for [the plaintiff's] . . . premise that the alleged incompetence of her first attorney constitutes 'good cause' in this context."); Shaver v. Colvin, No. 3:13-CV-00388-FDW, 2014 WL 3854143, at *4 (W.D.N.C. Aug. 6, 2014) (citations omitted) ("Courts around the country, however, have repeatedly held that "[m]istakes by an attorney are not considered to be 'good cause' for purposes of a remand under Sentence Six."); Pierce v. Colvin, No. 7:12-CV-129-D, 2013 WL 3326716, at *5n.6 (E.D.N.C. July 1, 2013) ("Any incompetence by plaintiff's attorney at the time in not submitting the records earlier is not a basis for good cause.").

However, even if the court found that good cause exists, this evidence is neither new nor material. Plaintiff seeks to introduce work-related documents, the substance of which plaintiff has testified to, including why plaintiff stopped working as a pharmacist and plaintiff's use of the FMLA. Although plaintiff argues that the evidence regarding the disciplinary action taken by her former employer, which indicates plaintiff had multiple difficulties working with others, illustrates plaintiff meets the criteria of marked difficulties maintaining social functioning, even if true, this would not alter the decision of the ALJ in that the relevant standard requires marked difficulties in more than maintaining social functioning. See Listing of Impairments, § 12.02(B)(1)-(4) (requiring that a claimant demonstrate at least two of the following four limitations resulting from her paragraph A symptoms: 1) "[m]arked restriction of activities of daily living"; 2) "[m]arked difficulties in maintaining social functioning"; 3) "[m]arked difficulties in maintaining concentration, persistence, or pace"; or 4) "[r]epeated episodes of decompensation, each of extended duration.") (emphasis added).[11]

In sum, plaintiff's motion for reconsideration is denied, and the additional evidence presented by plaintiff does not warrant a remand pursuant to sentence six of 42 U.S.C. § 405(g).[12]

---

[11] The court notes these records contain a letter from Dr. Steel to plaintiff's employer, informing the employer of plaintiff's diagnosis of MS, that her prognosis is guarded, "that she will continue to have a slowly progressive course," that "full recovery is not expected, and that, in Dr Steel's opinion, "she is permanently disabled from her position as a hospital pharmacist." (DE 15-6 at 1). This information is wholly consistent with the evidence that was before the ALJ, and the court finds no reasonable possibility that this evidence would have changed the outcome of the ALJ's decision.

[12] Because a sentence six remand is not appropriate, the additional evidence proffered by plaintiff will not be considered by the court in its review. See Smith v. Chafer, 99 F.3d 635, 638n.5 (4th Cir. 1996) (citing United States v. Carlo Bianchi & Co., 373 U.S. 709, 714-15 (1963)) ("In determining whether the ALJ's decision is supported by substantial evidence, a district court cannot consider evidence which was not presented to the ALJ.").

3. Plaintiff's Additional Arguments for Remand

Plaintiff argues that the ALJ erred in his credibility determination regarding plaintiff and by ignoring plaintiff's testimony regarding her absenteeism. These argument are intertwined, and the court will now address both.[13]

In assessing credibility of a claimant's allegations of pain or other disabling symptoms, the ALJ must follow a two-step process: (1) the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms, including pain, and (2) the ALJ must evaluate the credibility of the statements regarding those symptoms. Craig, 76 F.3d at 594-96. The evaluation must account for "all the available evidence, including the claimant's medical history, medical signs, . . . laboratory findings," "daily activities," and "medical treatment." Id. at 595 (internal quotations omitted). The decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

At step one, the ALJ found that plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, including fatigue, difficulty concentrating, difficulties verbally expressing, forgetfulness, vertigo, and numbness and tingling in upper extremities. (Tr. at 24-25). However, at step two, the ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of these symptoms are "not entirely persuasive of disability." (Tr. at 25).

---

[13] The magistrate judge concluded that the ALJ's failure to sufficiently consider Listing 11.09 dispositive and did not address plaintiff's further objections to the ALJ's report, objections which the court turns to now.

Plaintiff argues that the ALJ in particular failed to properly credit or assess plaintiff's testimony that plaintiff has "good and bad days, with the 'bad' days numbering 15 more per month," wherein plaintiff does not leave the house unless absolutely necessary, which the ALJ found "not corroborated by the record." (DE 13 at 13; Tr. at 29). Plaintiff further argues "[t]he glaring problem in this case is the ALJ did not address the [Vocational Expert's] testimony of 'no more than 1 day absent a month as tolerable for a job in the national economy' or the testimony of the plaintiff of 'using up' her FMLA leave," the latter of which plaintiff asserts illustrates she is unable to work any job in the national economy. (DE 13 at 12, 14).

Although plaintiff argues the ALJ is incorrect and the medical evidence "substantiates all [of plaintiff's] claims," id. at 14, the ALJ determination otherwise is supported by substantial evidence. The record does support the conclusion that plaintiff missed work in her previous position as a pharmacist, but as pointed out by the ALJ, "the issue here is not whether the claimant can be restored to full heath, or even rendered free from pain" but "what the individual can do despite his or her limitations." (Tr. at 29-30).[14]

Turning to the medical evidence as thoroughly summarized by the ALJ, the ALJ recognized that plaintiff's treating physician Dr. Steele on September 11, 2012, found significant plaintiff's slowed cognitive performance, impaired verbal memory, reaction time, complex attention, and cognitive flexibility, scoring low average, low, or very low in almost all categories, along with

---

[14] Plaintiff repeatedly stresses that the vocational expert's testimony, along with plaintiff's testimony regarding her absenteeism from her previous position as a pharmacist, proves her disability and her inability to work any job in the national economy. However, as addressed by the ALJ, "claimant's previous job as a pharmacist required a high degree of mental acuity, concentration, and the ability to multi-task," . . . . While [plaintiff's current] deficits might disqualify the claimant from performing complex tasks, as was the case with her prior job, the evidence does not support an inability to perform simple, unskilled work and to maintain concentration, persistence, and pace needed to accomplish those tasks." (Tr. at 29).

16

plaintiff's reported anxiety disorder, which the doctor found "severe." (Tr. at 26, 272-73). However, on December 12, 2012, shortly after plaintiff stopped working, Dr. Steele found a "normal neuro exam at this time," "normal strength, no drift, no abnormal involuntary movements, good balance and walking," "orientation, memory, attention, language and fund of knowledge were normal, "coordination was normal, including finger to nose, heal to shin, and rapid alternating movements," and only noted "concern for cognitive impairment from MS." (Tr. at 265-66).

Thereafter, plaintiff saw Dr. Long on in January of 2013, who conducted multiple tests on plaintiff, including the Wechsler Memory Scale Fourth Edition ("WMS-IV"), the Wechsler Adult Intelligence Scales Fourth Edition ("WAIS-IV"). (Tr. at 281). The WMS-IV showed the claimant in the average range of auditory and immediate memory, but in the low average for visual, visual working, and delayed memory. (Tr. at 282). The WAIS-IV produced scores in the average range, except for verbal comprehension, which was high average. (Id.). Dr. Long states "[n]o significant deficits [in attention] were noted," plaintiff's "ability to recall information immediately after hearing or viewing it was unimpaired for the most part," and "no [language, calculations, visuespatial/constructional, or executive] deficits were noted." (Tr. at 284). Dr. Long considered the "results of testing as consistent with a diagnosis of Multiple Sclerosis" and that plaintiff's "scores on tests of cognitive functioning were, overall, within a normal range for persons her age, but her performance in the areas of processing speed and working memory were noted as likely decreased from her previous level of functioning and affected by fatigue." (Id.).

The claimant underwent a consultative psychological evaluation of March 13, 2013, conducted by Dr. Edward Crane, who concluded the claimant could perform simple, routine, repetitive tasks, but there could be a mild-to-moderate impairment of the capacity to interact with

17

others. (Tr. at 289). Similarly, her capacity for concentration, persistence, and pace could be mildly-to-moderately impaired. (Id.).

On June 12, 2013, Dr. Steel noted claimant doing very well from a MS standpoint, and on December 20, 2013, Dr. Steel noted claimant's medication, Gilenya, had stabilized her MS symptoms. (Tr. at 370, 372, 374). Dr. Steel's assessment was for stable MS, anxiety disorder, migraines, and improved depression. (Tr. at 372). Finally, plaintiff was last seen on August 25, 2014, by Dr. Steele, who stated "she is fully functional in all activities," including "unlimited" walking." (Tr. at 357-59).[15]

In considering the foregoing evidence, the ALJ noted that neither Dr. Long or Dr. Steel provided specific opinions related to plaintiff's work functioning. (Tr. at 29). The ALJ did note, however, that Dr. Long's assessment provided a baseline level of cognitive functioning. (Id.). The ALJ gave partial weight to Dr. Crane's consultive examination, in that it was a single examination, but noted his assessment of mild-to-moderate impairment in various areas of functioning is consistent with the evidence from Dr. Long and Dr. Steel. (Id.).[16] The court notes that none of the opinion evidence indicates that plaintiff's symptoms are as debilitating as claimed.

Plaintiff cites extensively to the plaintiff's medical records to substantiate her own credibility. However, plaintiff's citations are predominately evidence not from health care providers but her self-reported symptoms submitted to those providers, particularly with regard to plaintiff's

---

[15] Plaintiff implies that the ALJ incorrectly evaluated medical findings and opinion in formulating plaintiff's RFC. However, upon thorough review of the entire record, the court finds that the ALJ carefully summarized and considered all of plaintiff's medical records, particularly regarding plaintiff's mental limitations caused by plaintiff's MS.

[16] The ALJ additionally gave little weight to the opinion of Dr. Margaret Parrish, who, at the reconsideration review, concluded plaintiff could perform a reduced range of medium exertional work, finding that at the hearing level, the limitation of light exertional work is supported. (Tr. at 29).

symptoms of fatigue and low energy. This evidence confirms plaintiff's subjective complaints of symptoms, but the ALJ was not required to accept this evidence to the extent it was inconsistent with the evidence provided by plaintiff's medical care providers. See S.S.R. 96–7p, 1996 WL 374186, at *2 (July 2, 1996); Craig, 76 F.3d at 595 (although subjective complaints of pain and other symptoms may not be discredited solely because they are not substantiated by objective evidence, "they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause" the pain or symptom).

In sum, the court finds the ALJ's credibility assessment of plaintiff, including plaintiff's testimony regarding her absenteeism, to be supported by substantial evidence.

## CONCLUSION

Based on the foregoing, and upon de novo review of the administrative record, the court rejects the findings, analysis, and recommendation in the M&R. Plaintiff's motion for judgment on the pleadings (DE 13) is DENIED, defendant's motion for judgment on the pleadings (DE 20) is GRANTED. Additionally, plaintiff's motion for reconsideration (DE 25) is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED this the 29th day of March, 2018.

LOUISE W. FLANAGAN
United States District Judge